JONES, JUDGE:
Some twenty years ago the State of West Virginia entered into a contract with the claimant, United Air Lines, Inc., for the establishment of a Universal Air Travel Plan providing worldwide credit for passage on any commercial carrier or scheduled airline. During the period involved in this claim, approximately 45 split billing accounts were in use by various departments and divisions of the State government, one being the Office of the Governor. Approximately 200 air travel credit cards were outstanding and at least 12 of these were held by the Governor and members of his staff. Under the contract with the State, the claimant exercised no control over the distribution of the credit cards which were supplied upon proper request by the Department of Finance and Administration; but the claimant did submit monthly or bi-monthly bills to the several departments, including the Governor’s office, showing charges incurred by the credit card holders for services rendered during the billing period by the claimant and all other participating air lines. The procedure for the payment of these charges imposed a duty upon each credit card holder to submit a travel voucher to the proper accounting personnel in his office *30 or department, whereupon a requisition was forwarded to the State Auditor for the issuance of a State warrant to the claimant.
At the expiration of the Governor’s term on December 31, 1968, the claimant’s account for the Governor’s office showed a balance owing in the amount of $4,674.11 (including an item of $110.25 hereinafter disposed of). The indicated balance could not be reconciled with the bookkeeping records in the Governor’s office, so it was determined that a thorough examination of all available records should be made to ascertain, if possible, the correct amount owing to the claimant. A voluminous statement of account, item by item, was furnished by the claimant and the reconcilation was undertaken by Ruby Oliver, Comptroller in the Governor’s office during the entire period and continuing in that position. The findings and analyses set forth in the Final Reconcilation, filed as an exhibit in the record of this proceeding, clearly show a comprehensive and painstaking effort on the part of the Comptroller, and the Court accepts this document as accurate and true. A brief summary of the reconcilation follows:
United Air Lines Account Balance_ $4,674.11

Less Credits For:

1. 1965 Unidentified Charges___ 360.85
$4,313.26
2. Tickets Returned to American Airlines_ 1,224.10
$3,089.16
3. Blanket Tax Exemption Certificate _ 130.69
$2,958.47
Less Payments:
1. Gov. Hulett C. Smith’s personal check _ $1,649.52
2. Dr. Daniel Hamety’s personal check 115.00
3. State Warrant-Reissued _ 18.30 1,782.82
$1,175.65
Adjustment for Overcharge _ 2.15
Amount of Claim $1,173.50
*31 After this claim was filed, a former employee voluntarily paid to the claimant the sum of $42.85 to cover a charge which both she and this Court believe was incurred in the performance of her official duties, but, having failed to file a travel voucher at the time of the trip, some three years before, she preferred to avoid any question of personal responsibility by paying the invoice item. This payment reduced the claim to $1,130.65.
The respondent categorically denies an item of this claim in the amount of $110.25 for a ticket purchased on January 22, 1969, by a former employee whose employment was terminated prior to the credit card charge. While there is no doubt that the service was performed and the claimant is entitled to be paid by someone, there is absolutely nothing in the record of this case to justify the payment of this part of the claim and the same is disallowed.
After deducting the sum of $110.25, the net claim left for consideration by the Court is the sum of $1,020.40. The respondent admits in its answer that its employees did, in fact, purchase tickets for travel on various airlines which were duly and fairly invoiced in the aggregate sum of $1,020.40. The respondent further answers that while it cannot say that all of the tickets were purchased for official state business, because travel vouchers for same have not been filed, “* * * it is presumed that they were.”
The Court is concerned that some of these charges may be for travel not related to official State business, even though the holders of the credit cards were bona fide employees of the State and presumably engaged in the exercise of their official duties. However, the State bought credit from the claimant, made a deposit of $425.00 to bind the deal, and for many years has maintained the contract and has been supplied travel credit cards for the use of certain of its employees pursuant to requisition by the Department of Finance and Administration. The claimant had no control over the actions of the credit card holders, but, under the contract, it was required to supply passage to anyone holding a legally authorized card. Conversely, the State did have the power to control its employees and to require them to account for the expenditure of State funds. It appears to the Court that the power and authority of the Governor’s office was not exercised at the level of efficiency and trust that the public deserves, but giving careful and deliberate consideration to all of the facts and circumstances pertaining to *32 this case, the Court is of opinion that the State did receive the services claimed to have been rendered and was benefited thereby in the amount of the award hereinafter made.
Accordingly, the Court is of opinion that the claimant has established a moral obligation on the part of the State to compensate it for services duly rendered, and the claimant, United Air Lines, Inc., is hereby awarded the sum of One Thousand Twenty Dollars and Forty Cents ($1,040.20).
Award of $1,040.20.